IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

META MED, LLC, et al.,

Plaintiffs,

v.

INSULET CORPORATION, et al.,

Defendants.

CIVIL NO. 23-1546 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

The present case involves the Puerto Rico Dealer's Contract Act, known as Law 75, P.R. Laws Ann. tit. 10 §§278-278d ("Law 75") which governs the business relationship between principals and the locally appointed distributors that market their products.  On October 30, 2023, Plaintiffs Meta Med, LLC, and Lyvette Mercado Vélez ("Meta Med" and "Mercado", collectively" Plaintiffs") brought the present case against Defendants Insulet Corporation, GEM Edwards d/b/a GEMCO Medical, and Emily Corporation d/b/a DDP Medical Supply ("Insulet", "GEMCO" and "DDP", collectively "Defendants").   Plaintiffs bring causes of action arising from Law 75 or alternatively, under the provisions of Puerto Rico Sales Representative Act, known as Law 21, P.R. Laws Ann. tit. 10 §§279-279h ("Law 21"), and other local laws.

Meta Med is a corporation duly organized and existing under the laws of Puerto Rico and operates out of Bayamón, P.R.  Mercado is Meta Med's President and Resident Agent.  Insulet is a medical device company organized under the laws of Delaware with offices located in Acton, MA, which manufactures products to control diabetes.  GEMCO

is a healthcare wholesale distribution company operating out of Hudson, OH.  DDP is a wholesale medical supplier operating out of St. Petersburg, FL.  The case is before the Court on diversity jurisdiction.

Mercado is a licensed registered dietitian and nutritionist, who in December 2021, entered into an agreement with Insulet to provide trainings in Puerto Rico for its diabetes treatment products.  Plaintiffs claim that, during this time, Mercado promoted and created a favorable market for Insulet's products in Puerto Rico, and became a distributor of Insulet's clinical services and products protected by Law 75.  During the summer of 2022, Mercado created Meta Med which entered into a separate agreement with Insulet to provide trainings of its diabetes treatment products on September 1, 2022.  DDP and GEMCO are wholesale distributors that resell Insulet's products to local companies such as Meta Med.

Plaintiffs allege that in September 2023, Insulet terminated Meta Med and chose another company to be its exclusive distributor for the Puerto Rico market, to their detriment.  Plaintiffs proffer they are protected under Law 75 as distributors of Insulet's products who created a favorable local market.  According to Plaintiffs, Insulet's product wholesalers DDP and GEMCO acted as Insulet's agents and should therefore also be considered principals under Law 75.

Plaintiffs seek a declaratory judgment that they are protected under Law 75 and that said statute applies to its relationship with Insulet, GEMCO and DDP all acting as principals.  Plaintiffs additionally allege impairment, termination and loss of goodwill under Law 75, breach of the covenant of good faith and fair dealing under Puerto Rico law, and seek damages and attorney's fees due to Defendants' actions.  In the alternative,

Plaintiffs contend they are protected as an exclusive sales representative under Law 21. Finally, the Complaint also included a petition for the provisional preliminary injunction available under Law 75, which allows the parties to continue the course of the relationship under the terms of the original agreement during the pendency of the lawsuit. (Docket No. 1). An Amended Complaint was filed on March 3, 2024, at which time Plaintiffs also filed a separate "Motion for Preliminary Injunction" reiterating their petition for *pendente lite* relief. (Docket Nos. 18 and 19).

Before the Court now are the Motions to Dismiss filed by all Defendants, and Plaintiffs' oppositions thereto. (Docket Nos. 27, 29, 30, 32, 53, 54, 56 and 57). The Court first addresses the merits of the different dispositive motions to narrow down the scope of the preliminary injunction hearing and the parties that will be ultimately involved.

For the reasons explained below, the Court GRANTS DDP and GEMCO's Motions to Dismiss (Docket Nos. 27 and 32); GRANTS Insulet's Motion to Dismiss as to Mercado (Docket No. 29); and GRANTS Insulet's Motion for Partial Dismissal of certain claims as to Meta Med. (Docket No. 30).

## STANDARD

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A "short and plain" statement needs only enough detail to provide a defendant with "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007); Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007). In order to show an entitlement to relief, a complaint must contain enough factual material "to raise a right to relief above the

speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555, 127 S.Ct. at 1965.

When addressing a motion to dismiss under Rule 12, the court must "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiffs." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48-49 (1st Cir. 2009). Under Twombly, not much is required, but a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." Twombly, 550 U.S. at 555, 127 S.Ct. at 1965. A plaintiff is required to present allegations that nudge the claims "across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). Id. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009).

As relevant to this case, the Court adds that the First Circuit treats "a motion to dismiss based on a forum selection clause as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)." Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009); Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 387 (1st Cir. 2001). For this reason, the Court may consider "documents the authenticity of which are not disputed by the parties," "documents central to plaintiffs' claim," and "documents sufficiently referred to in the complaint." Centro Médico de Turabo, 575 F.3d at 15 (quoting Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir.2001); see also Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) ("When . . . a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

### STATEMENT OF FACTS[1]

The Court accepts Plaintiff's allegations as true for purposes of the Motions to Dismiss. Ponsa-Rabell v. Santander Sec., LLC, 35 F.4th 26, 30 (1st Cir. 2022); O'Brien v. Deutsche Bank Nat'l Tr. Co., 948 F.3d 31, 35 (1st Cir. 2020).

On or around December 2021, Mercado began a commercial relationship with Insulet regarding some of Insulet's diabetes treatment products. They signed an agreement for Mercado to promote, sell, and offer clinical services in Puerto Rico for Omnipod and Dash, which are insulin pumps to treat type I and II diabetes. The Omnipod pump is a medical device that must also offer an education plan to patients, as well as monitoring and communication with healthcare providers for the correct use and data interpretation of the pump data. Administrative, clinical, and nutritional services are therefore essential before, during, and after the sale of the equipment.

Mercado initially provided sales and clinical services for Insulet's products in exchange of an hourly rate based on the number of products sold and the services she provided. As distributor of the aforementioned services, she played a significant role in the Puerto Rico market. She created a favorable market for these products and services amongst patients and healthcare professionals locally, because of which Omnipod and Dash experienced outstanding sales, clinical services, and market presence in Puerto Rico.

On July 5, 2022, Mercado established Meta Med, LLC and signed a new agreement with Insulet. The initial agreement between Mercado and Insulet allowed her to sell

---

[1] All facts are taken from the Amended Complaint. (Docket No. 18).

Meta Med, LLC, et al. v. Insulet Corporation, et al.
Opinion and Order
Civil 23-1546 (CVR)
Page 6

Insulet's merchandise and services as a pharmacy product on commission. However, after the new agreement was signed, Insulet changed course in August 2022 and authorized the distribution of its products, including the new Omnipod 5, through the medical equipment channel known as Durable Medical Equipment. Although in disagreement with this strategy, Plaintiffs spent a substantial amount of effort and investment establishing a platform for the promotion and sale of the products and providing specific services for Omnipod's patients in Puerto Rico, now conducted through Meta Med.

At some point, Insulet also enlisted the services of GEMCO and DDP for the wholesale distribution of Omnipods within the United States, while allowing Meta Med to buy Omnipods from these companies for resale in Puerto Rico.[2] GEMCO and DDP acted as Insulet's agents and according to Plaintiffs, are considered principals under Law 75, as they had a level of control and responsibility over Insulet's goods that surpassed the typical role of a wholesaler. As a result of this situation, Plaintiffs had to obtain the Omnipod's products through GEMCO and DDP.

From August to September 2023, Insulet gave Meta Med the impression that it would remain as an Insulet's product distributor, and requested confidential business information and encouraged Meta Med to pursue corporate loans. Nonetheless, in August 2023, Meta Med began to experience difficulties obtaining Ominpods. Mercado contacted GEMCO, who after an email exchange, informed her that Insulet instructed it to not sell Omnipods to Meta Med. The same thing happened in September 2023 when

---

[2] The Amended Complaint fails to specify when GEMCO and DDP became involved in selling Insulet's products to Meta Med, and how Mercado purchased Insulet's products before Meta Med's creation (i.e., whether she purchased them directly through Insulet or through DDP and/or GEMCO).

Meta Med attempted to place an order for Omnipods through DDP and the product appeared as "out of stock" on the website.  After contacting a DDP's representative, Meta Med was informed that Insulet had instructed DDP not to provide Meta Med with Omnipods.  As an authorized Insulet's product wholesaler, DDP told Meta Med that it was bound by those directives.  Insulet then terminated Meta Med as a distributor in Puerto Rico and appointed Absolife instead.

Meta Med is the only entity in Puerto Rico that has a credentialed corporate official, Mercado, who holds a Certified Diabetes Care and Education Specialist certification.  Meta Med's profits are composed of approximately 97% of Insulet's products and related exclusive clinical and educational services and thus, it risks grave injury from Defendants' actions, which have impaired the commercial existing relationship between them.

## LEGAL ANALYSIS

Plaintiffs bring forth the following causes of action against all Defendants: 1) under Law 75 for protection, impairment, termination, and loss of goodwill; 2) for breach of covenant of good faith and fair dealing under Puerto Rico law; and 3) under Law 21.  The Court examines each one in turn.

### A.  GEMCO and DDP's Motions to Dismiss (Docket Nos. 27 and 32).

1. Law 75.

GEMCO and DDP each base their motion for dismissal on the same arguments, to wit, that Law 75 does not apply to them because they are not principals; the Court lacks subject matter jurisdiction insofar as Plaintiffs have failed to meet the $75,000 amount in controversy requirement; and Law 21 is inapplicable to this case as Plaintiffs were not

exclusive sales representatives.  DDP additionally proffers a fourth reason for dismissal, namely, that its contract with Meta Med contains a mandatory choice of law and venue provision that requires the parties to litigate any claims arising from their agreement before the Court of Common Pleas in Summit County, Ohio.

Plaintiffs argue in opposition that GEMCO and DDP are "integral to the distribution chain", exerted significant influence and control over the distribution in question, and the relationship between all the Defendants and Plaintiffs "embodies the spirit" of a distribution agreement.  (Docket No. 56, p. 5).  They proffer that the Court must examine the "big picture" of the joint commercial relationship between the parties and that Defendants' concerted actions terminated the relationship without just cause and in contravention to Law 75.

The Court finds the first issue is dispositive because Law 75 is inapplicable to GEMCO and DDP, insofar as they are not principals or grantors.

Puerto Rico's Law 75 regulates the business relationship between principals and their locally appointed distributors.  See P.R. Laws Ann. tit. 10, § 278a; Caribe Indus. Sys., Inc. v. Nat'l Starch and Chem. Co., 212 F.3d 26, 29 (1st Cir. 2000); Irvine v. Murad Skin Rsch. Labs., Inc., 194 F.3d 313, 317-18 (1st Cir. 1999); Nilo Watch Parts. Inc. v. Rado Watch Co., Civil No. 23-1085 (CVR) 2023 WL 5814264 at *8 (D.P.R. Sept. 7, 2023); Freightliner, L.L.C. v. Puerto Rico Truck Sales, Inc., 399 F.Supp.2d 57, 70 (2005).  In essence, Law 75 looks to avoid the inequity of the arbitrary termination of a distribution relationship, and states that "no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause." P.R. Laws Ann. tit. 10, §§ 278, 278a;  see also

Waterproofing Systems, Inc. v. Hydro-Stop, Inc., 440 F.3d 24, 28-29 (1st Cir. 2006).  The law looks to protect Puerto Rico's dealers when a supplier arbitrarily terminates such an arrangement once a market is created for the supplier's products, thereby "frustrating the legitimate expectations and interests of those who so efficiently carried out their responsibilities."  Freightliner, L.L.C., 399 F.Supp.2d at 72 (quoting Medina & Medina v. Country Pride Foods, Ltd., 858 F.2d 817, 820 (1st Cir. 1988)); Alina & A Tours, Inc. v. Royal Caribbean Cruises, Ltd., Civil No. 06-1009 (JAG), 2006 WL 897975 at *8 (D.P.R. Mar. 31, 2006).

However, Law 75 is very clear in that it applies to a "principal or grantor" and that a dealer's contract is defined as the "relationship established between a dealer and a principal or grantor" of the products in question.  P.R. Laws Ann. tit. 10, §§ 278, 278a. The law is also clear in indicating that unjust impairment of a dealer's relationship subjects only the principal to damages.  Id., at § 278b.  Based on this language, GEMCO and DDP's assert that they are not principals or grantors of the distributorship in question.  Thus, as a matter of law, Law 75 is inapplicable to their relationship with Plaintiffs.

This District had the occasion to discuss this very issue in the case of Romero v. ITE Imperial Corp., 332 F.Supp. 523, 524 (D.P.R. 1971) which, although over fifty (50) years old, is still good law.  Plaintiffs argue that this case is "outdated" because it does not directly address the issue of joint liability between two principals under Law 75.  (Docket No. 57, p. 2).  Nonetheless, in so arguing, Plaintiffs put the cart before the horse.  They are correct in that Romero did not address liability among co-principals, but that

statement presupposes that the players in question were, in fact, both principals. Plaintiffs have not yet cleared that hurdle in this case.

The Court in Romero was quite clear in stressing that "the language of the statute thus appears to limit liability to the principal and grantor" and mentions that initial drafts of the law that attempted to expand liability to other players -which in Romero were potential successor distributors- failed to gain traction. Id. Ultimately, Romero noted that the Puerto Rico's Legislature chose to limit liability only to the principal or grantor and no one else. Id. Although Plaintiffs try to argue that Romero's holding is limited to successor distributors, the Court in that case clearly found that "thus, it was the clear intent of the Legislature of Puerto Rico to make only the manufacturer liable for the damages provided by said Act." Id., at 525.

Indeed, cases brought routinely before this Court have all dealt with challenges to a principal's allegedly detrimental actions and did not involve other parties down the distribution line. See e.g., Casco, Inc. v. John Deere Constr. & Forestry Co., 990 F.3d 1, 8 (1st Cir. 2021); Caribbean Rests, LLC v. Burger King Corp., 23 F.Supp.3d 70 (D.P.R. 2014); Irvine, 194 F.3d at 317. Even the Southern District of New York so found. See Gemco Latinoamerica, Inc. v. Seiko Time Corp., 685 F.Supp.400, 401 (S.D.N.Y. 1988) ("the statute and case law establish that a claim for damages under Law 75 may be brought only against the party who executed the dealer's contract.") (collecting cases).

Plaintiffs in the instant case admit that their theory is "novel" and argue that DDP and GEMCO should be considered principals under Law 75 since they had a higher level of control and responsibility over the goods than a typical wholesaler and were an "integral part of the distribution chain." (Docket No. 56, pp. 10, 11). Nevertheless,

Plaintiffs can point to no case where a party who is not a principal has been deemed an "agent" that falls under the purview of Law 75, and the Court has found none.  See Mario R. Franceschini, Inc. v. Riley Co., 591 F.Supp. 414, 418 (D.P.R. 1984) (Law 75 "does not apply to just anyone who comes in contact with a product or service in its route from manufacturer to consumer. If it did, shippers, carriers, custom brokers, husbandry agents, promoters, advertising agents and many others far removed from the distribution process would be covered.").

While Plaintiffs urge the Court to look at the "course of dealings" between the parties to find in their favor on this issue, the case they cite to for this proposition does little to help them.  Pointing to José Santiago, Inc. v. Smithfield Packaged Meats Corp., 66 F. 4th 329 (1st Cir. 2023), Plaintiffs argue that the lack of a formal agreement and the duration of the commercial relationship are not the primary criteria for determining the validity of a distribution agreement under Law 75.  While it is true that the Court in Smithfield held that, Law 75 recognizes a dealer's contract regardless of the way in which the parties characterize or execute such a relationship, the 20-plus year lifespan of the business dealings between the parties there was *precisely* the reason why that Court found that Law 75 applied.  That is not the case before the Court now, where the relationship between Meta Med and these two (2) Defendants lasted barely a year.

The other case Plaintiffs cite to, Goya de Puerto Rico, Inc. v. Rowland Coffee, 206 F.Supp.2d 211 (D.P.R. 2002), likewise does not help their position.  Goya involved the selling of a particular brand of coffee and subsequent assignment of exclusive rights of that brand to a third party, and whether the assignor of the rights, who was now removed from the equation, could be liable under Law 75.  Although the parties in Goya "suggested"

to the Court the issue of joint principal liability, the Court found the main issue to be determined was something else, to wit, "[t]he pivotal inquiry here, is not whether Law 75 admits joint liability by two "principals," as the parties seem to suggest.  Instead, the proper inquiry in this case is whether a former "principal" - Tetley - may be liable to Goya after assigning its contractual rights to 'Café Bustelo' to a third-party assignee – Rowland."  Id., at 215-216.  Thus, the Court in Goya found that Puerto Rico law imposed no liability on the assignor of a contractual right because that action liberated that party, and the assignor was no longer considered a "principal" under Law 75.  Once again, the Court would have to first make a finding that GEMCO and DDP are principals, and Plaintiffs proffer no legal basis for the Court to do so find at this time. [3]

In addition, it is evident that GEMCO and DDP's actions cannot be considered those of a principal.  The evidence supplied by Plaintiffs themselves as part of the Amended Complaint shows that these Defendants stopped selling Omnipods to Meta Med because they were ordered to cease *by their own principal*, Insulet, pursuant to DDP and GEMCO's respective agreements with Insulet.  Therefore, GEMCO and DDP were not acting as principals with "significant influence and control"[4] as Plaintiffs would have the Court find, insofar their sales to Meta Med were subject to Insulet's authorization.  Quite the opposite is evident, GEMCO and DDP had little control over who they sold to.  Thus, Plaintiffs' argument that Insulet made GEMCO and DDP a necessary part of the distribution of Omnipods in Puerto Rico to Plaintiffs' detriment is a matter to be

---

[3] The same reasoning applies to the section of Plaintiffs' opposition where they proffer that the question of whether two (2) principals can be jointly liable under Law 75 remains "unresolved."  (Docket No. 56, p. 9).  Again, that statement assumes that the parties involved *are* principals, and Plaintiffs do not submit anything for the Court to so find in this case.

[4] Docket No. 56, p. 11.

addressed in Plaintiffs' case against Insulet, their principal, and not against the intermediaries caught in the crossfire.[5]

Plaintiffs also argue in their opposition that DDP and GEMCO are indispensable parties, but do so in the context of the Law 75 claim, alleging they are integral to the Omnipod's distribution channels and Plaintiffs were damaged due to their actions. This argument is inapposite because the Court has found that Law 75 is inapplicable to Plaintiffs' claims against DDP and GEMCO.[6]

In sum, the Court today follows the long list of cases that have held that Law 75 applies only to grantors or principals. The fact that other parties were participants in the distribution chain does not make them principals. For this reason, the relationship between DDP, GEMCO and Plaintiffs is not protected under Law 75, as they were not principals or grantors that would make Law 75 applicable. Consequently, the Law 75 claims brought against GEMCO and DDP are DISMISSED WITH PREJUDICE.[7]

2. DDP and GEMCO's breach of covenant of good faith and fair dealings.

Citing to the creation of contracts under the now repealed 1930 Civil Code, P.R. Laws Ann. tit 31, §§ 2994 and 3375 (1930), Plaintiffs' Amended Complaint alleges that Puerto Rico law implies a covenant of good faith and fair dealings applicable to all

---

[5] Whether Meta Med had a valid distribution agreement under the purview of Law 75 with Insulet, its principal, is another matter that remains to be determined and will be the focus of the preliminary injunction hearing.

[6] Plaintiffs also proffer that Defendants' "inconsistencies create a genuine issue of material fact" as to the contractual terms which merits denial of their motions. (Docket No. 56, p. 14 and Docket No. 57, p. 18). However, as stated above, at this juncture the Court only looks at whether Plaintiffs' claims are plausible on their face, based on the facts as alleged. See, Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Ashcroft, 556 U.S. 662, 129 S.Ct. 1937. Arguments as to issues of material fact are reserved for motions in due course at the summary judgment stage. The Court finds this argument without merit as well since Plaintiffs' claims cannot prosper under Law 75 as a matter of law against these two (2) Defendants.

[7] GEMCO and DDP also argue that the Court lacked jurisdiction to hear this case, insofar as their rather limited sales did not allow Meta Med to reach the $75,000 amount in controversy requirement. The Court does not reach this issue, as it finds that Plaintiffs cannot prevail on their Law 75 claim against these two (2) Defendants. For that same reason, the Court does not reach GEMCO's additional argument that the parties must litigate any claims arising from their agreement before the Court of Common Pleas in Summit County, Ohio.

contracts, and Defendants failed to show just cause or provide adequate pre-termination notice as required by Law 75.  Plaintiffs argue these actions violate the distribution agreements and constitute a breach of the implied covenant of good faith and fair dealings.  These Articles have now been superseded by the revised Civil Code, which likewise requires good faith on behalf of parties in their dealings.  See P.R. Laws Ann. tit. 31, §8983 (2020) (The debtor and the creditor must both act in good faith when complying with the obligation).

The Court dismisses this claim for the reasons already stated above, to wit, that Law 75 only applies to grantors or principals, and neither DDP nor GEMCO can be classified as such in this case.  Accordingly, Plaintiffs' cause of action under Puerto Rico law for breach of good faith and fair dealings against DDP and GEMCO is DISMISSED WITH PREJUDICE.

## B. Insulet's motion to dismiss Mercado's claims (Docket No. 29).

Insulet's first motion focuses only on the claims brought by Mercado.  It avers that it entered into an agreement with Mercado ("the Agreement") on December 17, 2021, which details the parties' duties, rights, and obligations.  Section 7.7 of the Agreement contains a choice of law and forum clause, which reads, in pertinent part, as follows:

> This Agreement shall be governed by the laws of the Commonwealth of Massachusetts. Both parties hereby (1) irrevocably submit to the jurisdiction of any state or federal court sitting within Massachusetts in any action or proceeding brought to enforce or otherwise arising out of or relating to this Agreement, (2) irrevocably waive to the fullest extent permitted by law any objection that it may now or hereafter have to the laying of venue in any such action or proceeding in any such forum in Massachusetts, and (3) hereby further irrevocably waive any claim that any such forum is an inconvenient forum.
> (Docket No. 18, Exhibit 1, at p. 6.)

Insulet argues this language is a mandatory choice of law and forum clause that is *prima facie* valid, and that Mercado cannot meet the elements under the landmark case of M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907 (1972) (the "Bremen factors") to declare the clause invalid or inapplicable.  Thus, the Agreement signed by Mercado is governed by the laws of Massachusetts and she is required to file any claims against Insulet related to or arising from the Agreement in any state or federal court sitting within Massachusetts.  In the alternative, Insulet asks the Court for a transfer of venue as to Mercado's claims under 28 U.S.C. §1404(a) based on the same forum selection clause or, otherwise, to enter partial judgment on the pleadings under Fed. R. Civ. P. 12(c) regarding the Fourth Cause of Action, breach of covenant of good faith and fair dealings.

Mercado argues in her opposition that she and Meta Med had a "unified commercial relationship" with Insulet, whereby the relationship that initiated with her later evolved to include Meta Med, and that Insulet's motion to divide the relationship to litigate in two (2) different forums is impractical, cumbersome, and illogical.  (Docket No. 53, p. 3).  She offers little discussion as to the Bremen factors, opting instead to concentrate her efforts in arguing the clause is null and void due to Law 75's public policy considerations.  Mercado proffers that dismissal at this early stage before discovery, is disfavored and presents a separate discussion as to why Insulet has not met its burden to transfer this case under § 1404(a).

     1.  Permissive v. mandatory.

Under federal law, the threshold question in interpreting a forum selection clause is whether the clause is permissive or mandatory.  "Permissive forum selection clauses, often described as 'consent to jurisdiction' clauses, authorize jurisdiction and venue in a

designated forum, but do not prohibit litigation elsewhere ... In contrast, mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." Centro Médico de Turabo, 575 F.3d at 17.  The Court looks to the "specific language of the contract at issue" to determine whether the provision's terms reflect "clear language indicating that jurisdiction and venue are appropriate exclusively" in a designated forum.  Silva, 239 F.3d at 388.  This inquiry usually hinges on whether the provision includes any terms with a mandatory connotation, such as "shall" or "must."  See Claudio-De León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 46 (1st Cir. 2014) (the word "shall" is mandatory); Haddock-Acevedo v. Bd. of Governors of Univ. of Puerto Rico, 615 F.Supp.3d 78, 82-83 (D.P.R. 2022) (collecting cases).

 The Agreement between Mercado and Insulet states that it "shall be governed by the laws of the Commonwealth of Massachusetts" which is indicative of the type of law that will govern the Agreement.  The parties also "irrevocably submit[ted]" to the jurisdiction of any state or federal court in Massachusetts for any proceeding to enforce, arising out of or relating to the Agreement;  "irrevocably waive[d]" any objection to venue in Massachusetts; and "further irrevocably waive[d]" any claim that Massachusetts was an inconvenient forum.  (Docket No. 18, Exhibit 1, § 7.7).

 This choice of words clearly indicates that Massachusetts is the appropriate venue for this case, to the exclusion of all others.  See Centro Médico de Turabo, 575 F.3d at 17, n. 5 (including "shall" in a list of "typical mandatory terms").  The words "irrevocably submit" and "irrevocably waive" are strong and specific terms, which clearly demonstrate that the parties intended to litigate this case in Massachusetts and not in Puerto Rico.  The

Agreement further expressly and clearly waived any objections to that venue, such as the ones Mercado is raising now.  This conclusion is in line with other cases that have found that the use of words like "shall" and "exclusive" to be mandatory.  Compare Autoridad de Energía Eléctrica de Puerto Rico v. Ericsson, Inc., 201 F.3d 15 (1st Cir. 2000) ("agree to submit to the jurisdiction" of the courts of the Commonwealth of Puerto Rico was permissive) and Redondo Constr. Corp. v. Banco Exterior de España, S.A., 11 F.3d 3 (1st Cir. 1993) (finding that "expressly submits to jurisdiction of all Federal and State Courts" of Florida did not "negatively exclude any other proper jurisdiction") with Tantalos v. Toro Verde Enterprises, LLC, 651 F.Supp.3d 488, 495 (D.P.R. 2023) (finding that the worlds "shall" and "exclusively" made the clause mandatory); Verner Johnson, Inc. v. CSA Architects & Engineers LLP, Civil No. 10-1123 (CCC), 2010 WL 2900387 *1 (D.P.R. Jul. 16, 2010) (finding that the parties "irrevocably submit" to the jurisdiction of the courts of the Commonwealth of Puerto Rico was mandatory); Centro Médico de Turabo, 575 F.3d at 17 (the words "hereby expressly submits to jurisdiction" were deemed to be mandatory); Silva, 239 F.3d at 389 (the word "'must' expresses the parties' intention to make the courts of Illinois" the exclusive forum).

In sum, the use of the words "shall" and "irrevocably" in the Agreement in the instant case tip the balance in favor of finding that the clause is mandatory.

### 2. Dismissal v. transfer.

Insulet has filed a motion to dismiss, and in the alternative, for transfer under §1404.  If the motion is one to dismiss, the Court applies the Bremen factors, but if the motion is to transfer pursuant to §1404(a), then the rationale set forth in Stewart Org.,

Inc. v. Ricoh Corp., 487 U.S. 22, 108 S. Ct. 2239 (1988) is applied.[8]  MARPOR Corp. v. DFO, LLC, Civil No. 10-1312 (PG), 2010 WL 4922693, at *3 (D.P.R. Dec. 2, 2010); Isla Lab Prod. Corp. v. Iris Diagnostics, Civil No. 06-2232 (JAG), 2007 WL 9761296, at *2 (D.P.R. May 22, 2007).

In the Court of Appeals for the First Circuit ("First Circuit"), a forum-selection clause can be enforced through a Rule 12(b)(6) motion.  Montoya v. GoPro, Inc., Civil No. 22-1534 (DRD), 2023 WL 5177446, at *5 (D.P.R. Aug. 11, 2023); Lewis v. Hill, Civil No. 19-12500-DPW, 2023 WL 4706575, at *8 (D. Mass. July 24, 2023); Firemen's Ins. Co. of Washington, D.C. v. ACE Am. Ins. Co., 390 F. Supp. 3d 267, 274 (D. Mass. 2019) (citing Claudio-De León, 775 F.3d 41, 46 (1st Cir. 2014)); Centro Médico de Turabo, Inc., 575 F.3d at 15.  Therefore, to the extent that Insulet' first choice was a motion to dismiss and in the alternative, to transfer pursuant to §1404(a), the Bremen factors are controlling.

3.   The Bremen factors.

A forum selection clause will be deemed *prima facie* valid and will be enforced unless the opposing party meets the heavy burden of showing its unreasonableness, unfairness, or that the clause was procured by fraud or overreaching, or that "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."  M/S Bremen, 407 U.S. at 15, 92 S.Ct. at 1916. Therefore, to defeat Insulet's dispositive motion, Mercado must establish that the clause was the product of fraud or overreaching; that its enforcement would be unreasonable

---

[8] The difference between these two (2) petitions is that the Bremen factors apply when the choice of forum is a state court or a foreign jurisdiction, while the Stewart factors apply to a transfer to any federal court where the case could have been brought.  Antilles Cement Corp. v. Aalborg Portland A/S, 526 F. Supp. 2d 205, 207 (D.P.R. 2007).  Insulet therefore argues in favor of either of the choices because the clause in question states that the parties submit to the jurisdiction "of any state or federal court sitting within Massachusetts."  (Docket No. 18, Exhibit 1, § 7.7).

and unjust; that proceedings in Massachusetts will be so gravely difficult and inconvenient that she will be deprived of her day in court; or that enforcement of the terms of the clause would contravene a strong local public policy.

The Court applies federal common law, as there is no conflict between federal common law and Puerto Rico law regarding the enforceability of forum-selection clauses. Tantalos, 651 F.Supp.3d at 495; Silva, 239 F.3d at 387; Stereo Gema, Inc. v. Magnadyne Corp., 941 F.Supp. 271, 276 (D.P.R. 1996) (citing Unisys Puerto Rico v. Ramallo Bros. Printing, Inc., 128 D.P.R. 842, (1991)) (stating that the Puerto Rico Supreme Court has adopted the federal jurisprudence regarding general enforceability of forum-selection clauses). For that reason, "the fact that a Puerto Rico statute prescribes the applicability of forum selection clauses does not mean that the Court will automatically disregard the parties' freely-negotiated contractual obligations." Díaz-Rosado v. Auto Wax Co., Inc., Civil No. 04-2296 (SEC), 2005 WL 2138794 at *2 (D.P.R. Aug. 26, 2005)(collecting cases); Royal Bed & Spring Co., Inc. v. Famossul Industria E Comercio De Moveis LTDA., 906 F.2d 45, 49 (1st Cir. 1990).

Plaintiff Mercado offers a brief discussion of most of the Bremen factors together, and basically argues that she "alleged" in her Complaint that the clause was unreasonable, unjust and the result of overreaching and this is enough to comply with the Bremen analysis. She additionally proffers that the Agreement signed between the parties was one of adhesion, and this creates a potential for overreaching and unfairness, and generates "practical impediments to litigation", meaning hardship and inconvenience. (Docket No. 53, p. 10). In addition, she claims that having had no opportunity negotiate its terms, the contract must be construed in her favor and against Insulet. (Docket No.

53, n. 1; pp. 9-10.).   Mercado confusingly cites to Massachusetts state law for this proposition.  Id.

The mere fact that a contract is one of adhesion does not render it per se unenforceable, and "[m]ere inequality of bargaining power between two sides will not be enough to render a contract unenforceable." Outek Caribbean Distrib., Inc. v. Echo, Inc., 206 F.Supp.2d 263, 267 (D.P.R. 2002); see also Nieves v. Intercontinental Life Ins. Co. of P.R., 964 F.2d 60, 63 (1st Cir. 1992) ("[A]dhesion does not imply nullity of a contract"). The First Circuit has held that when the forum selection provision is clear "we do not have to address whether the ... doctrine of *contra preferentum* [9] applies." Pelletier v. Yellow Transp., Inc., 549 F.3d 578, 582 (1st Cir. 2008); see also Fireman's Fund Ins. Co. v. M.V. DSR Atl., 131 F.3d 1336, 1339 (9th Cir. 1997) ("As we find no ambiguity in the forum clause, whether or not [the contract] is a contract of adhesion is of no relevance to the result we reach in this matter").  The clause in question could not be clearer, so this argument is a non-starter.

Additionally, as Insulet candidly argues, "inconvenience as to the forum specified in the clause does not render the clause unenforceable, especially if the parties were aware of the inconvenience at the time of the agreement." (Docket No. 29, p. 13).  Besides Plaintiff's conclusory allegation that dismissing this case would inconvenience her and impose such a hardship that it would deny her a day in court, she brings nothing before this Court in support of her argument against dismissal.  Plaintiff Mercado has not alleged, for example, that she failed to read the document, or that she was forced to sign

---

[9] Latin referring to a rule of contract interpretation that states an ambiguous contract term should be construed against the drafter of the contract.

it under duress, or she failed to understand it, or that her counsel failed to examine it. Despite submitting an inordinate amount of documents in support of both her Amended Complaint and petition for preliminary injunction, nothing in those documents lends any support for her argument against dismissal.

As to Mercado's assertions that her allegations must be taken at face value, while it is true that at this juncture the Court must take as true all allegations in the Complaint, the Court "need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009) (quoting Twombly, 550 U .S. at 557, 127 S.Ct 1955).   The burden of proof to set aside a forum selection clause is a heavy one as the clause is presumed valid, and she must bring forth more than conclusory allegations.  In re: Mercurio, 402 F.3d 62, 66 (1st Cir. 2005); Díaz-Rosado, 2005 WL 2138794, at *2.

The Court finds Mercado has failed to meet her burden because her limited Bremen analysis falters and her conclusory allegations that enforcing the clause creates hardship and she would otherwise be denied her day in court are insufficient.  The heavy burden of proof to set aside a forum selection clause requires more "than simply showing that another location would be more convenient."  Puerto Rico Surgical Techs, Inc. v. Applied Med. Dist. Corp., Civil No. 10-1797 (JP), 2010 WL 4237927 at *3 (D.P.R. Oct. 22, 2010)(citing Mercurio, 402 F.3d at 66).  Simply put, in response to the Complaint, Insulet has put the ball in Mercado's court on this issue, and she must come up with more than conclusory statements as to these elements.   Mercado has failed to do so.

The force of Plaintiff Mercado's developed argument really centers around the last Bremen factor, namely Law 75's public policy element, where she avers that the governing

law provision choosing Massachusetts' law and venue is null because it goes against the public policy objectives of Law 75 of protecting local business developers. She claims that Law 75 precludes enforcement of a choice of law or venue agreements in jurisdictions outside Puerto Rico.

A review of the applicable caselaw shows that the exception is not as rare as Plaintiff argues. This would not be the first time that this district has found that forum selection clauses are valid and enforceable despite Law 75's public policy considerations and prohibition. See e.g., Díaz-Rosado, 2005 WL 2138794 *2 (finding that the public policy argument that Law 75 prohibits the enforceability of forum selection clauses lacks merit); Marel Corp. v. ENCAD Inc., 178 F.Supp.2d 56, 59 (D.P.R. 2001) (court found that federal law, which required the balancing of multiple interests, prevailed over the automatic application of Law 75 and held forum selection clause valid and enforceable); Stereo Gema, Inc., 941 F.Supp. at 275 (holding that a court sitting in diversity should apply federal common law to the interpretation of forum selection clauses in Law 75 cases); Outek, 206 F.Supp.2d at 269 (forum selection clause in Law 75 case upheld); Puerto Rico Surgical Techs., Inc., 2010 WL 4237927, at *3 (same result); D.I.P.R. Mfg., Inc. v. Perry Ellis Int'l, Inc., 472 F.Supp.2d 151, 156 (D.P.R. 2007) (same result). Additionally, the case of Famossul, 906 F.2d at 49 held that a forum selection clause in a distribution agreement pursuant to Law 75, which designated Brazil as the forum to litigate any action under said agreement, was valid and enforceable. Other cases have

found that the Law 75's public policy concerns have yielded to clauses covered by the Federal Arbitration Act.[10]

Furthermore, there is no reason to think, and Plaintiffs provide none, that Massachusetts cannot consider Mercado's Law 75 claims.  It would not be the first time that a court outside Puerto Rico decides a case based on Law 75.  See Caribbean Wholesales and Serv. Corp. v. U.S. JVC Corp., 101 F.Supp.2d 236 (S.D.N.Y. 2000); Hancor, Inc. v. Inter Am. Builders Agencies, Co., Civil No. 97-7540, 1998 WL 239283 (N.D. Ohio March 19, 1998); Harley-Davidson Motor Co. v. Motor Sport, Inc., 6 F.Supp.2d 996 (E.D. Wis. 1998); Whirlpool Corp. v. U.M.C.O. Int'l Corp., 748 F.Supp. 1557 (S.D. Fla. 1990); and Gemco Latinoamerica, Inc., 685 F.Supp. at 400.

Plaintiff Mercado cites to the undersigned's case in Caguas Lumber Yard Inc. v. Ace Hardware Corp., 827 F.Supp.2d 76 (D.P.R. 2011) for the proposition that Law 75's public policy considerations render the choice of law provision null and void.  However, the Caguas Lumber Yard case was brought under a § 1404(a) transfer to another federal court, which carries an analysis of a different set of factors.  Caguas Lumber also predates the now controlling case of Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Texas, 571 U.S. 49, 59, 134 S.Ct. 568 (2013), which calls for courts to discard the traditional elements to be considered in a petition for transfer under § 1404(a) when a forum selection clause is invoked.  Hence, the Caguas Lumber holding is inapplicable to this situation.

---

[10] Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 626, 105 S.Ct. 3346, 3354 (1985); World Films v. Paramount Pictures Corp., 125 D.P.R. 352 (1990).

In sum, the Court finds that Plaintiff Mercado has not met the <u>Bremen</u> factors to overcome the presumption that the forum selection and choice of law clause in the contract with Meta Med is somehow invalid and should not be honored. Even considering Puerto Rico's public policy exception under Law 75, that exception is not absolute, and Mercado has been unable to show that any of the other <u>Bremen</u> elements favor her. Under these circumstances, the Court will not disturb the parties' freely contracted choice of venue. <u>See</u> <u>Antilles Cement</u>, 526 F.Supp.2d at 208 ("Disregarding the parties' choice of forum is reserved for those extreme situations where the evidence shows that not only will it be 'gravely difficult and inconvenient' to face trial threat but also 'that he will for all practical purposes be deprived of his day in court'"). On the contrary, "enforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." <u>Scotiabank de Puerto Rico v. Residential Partners S.E.</u>, 350 F.Supp.2d 334, 339 (D.P.R. 2004).

Accordingly, the Court concludes that Plaintiff Mercado has failed to establish that enforcing the forum selection clause is sufficiently inconvenient to make it invalid, that it was the result of fraud or overreaching, or that it is unreasonable or unjust, and thus declines to extend Law 75's public policy considerations, for the reasons stated above. This is what the parties bargained for, and they must now adhere to that bargain.

Since the Court finds that Defendants' 12(b)(6) motion is sufficient to grant dismissal, it need not analyze the merits of the transfer pursuant to § 1404(a).[11]

---

[11] Even if the Court were to do so, it finds Mercado has failed to adequately support her position as to this issue. As previously stated, <u>Atlantic Marine</u> now controls a transfer petition when a forum-selection clause is invoked. This analysis now requires different factors to be considered in lieu of the traditional § 1404(a) elements. <u>Atlantic Marine</u>, 571 U.S. at 581, 134 S.Ct. at 63. Mercado considers none of these new elements opting instead to discuss the traditional §1404(a) factors that <u>Atlantic Marine</u> specifically found to be inapplicable to a § 1404(a) transfer where there is a forum selection clause. This is enough to deem this issue waived, and Mercado would therefore fail to clear this high hurdle

Considering the above, the Court finds that Plaintiff Mercado's claims against Insulet must be litigated in Massachusetts.  As such, Insulet's Motion to Dismiss (Docket No. 29) Mercado's claims is GRANTED and Plaintiff Mercado's claims against Insulet are DISMISSED WITHOUT PREJUDICE of being refiled in the appropriate forum.

### C.  Insulet's motion for partial dismissal of Meta Med's claims (Docket No. 30).

1. Claims arising before July 5, 2022.

Insulet's second motion pertains exclusively to Meta Med.  Insulet proffers that the Amended Complaint intermingles allegations pertaining to both Plaintiffs, but not all the allegations can surpass the relatively low bar required to survive dismissal at this stage.  Specifically, Insulet points to factual allegations as to Meta Med that allegedly took place before July 5, 2022, the date Meta Med was organized and registered in the Puerto Rico State Department.  Taking the allegations in the Amended Complaint as true, if Meta Med was organized and registered on July 5, 2022, then the allegations in the Amended Complaint that pertain to Meta Med before its date of organization must be dismissed.  These allegations are ¶¶ 8, 39, 87, 88, 90, 113 (a), 128, 130, and 132, and include the request for relief portion, which asks the Court to enter a declaratory judgment that the commercial relationship between Defendants and Meta Med is protected by Law 75 since 2021.

Plaintiff's position is that the relationship represents a continuous, ongoing business between both Plaintiffs and Insulet, and thus, Insulet's arguments run contrary to the factual pleadings.  Plaintiffs also proffer that they were distributors of Insulet's

---

as well, insofar as "the practical result is that forum-selection clauses should control except in unusual cases" and "such cases will not be common."  Id., at 582, 64.

products, and that Insulet's actions in denying this fact now could entail a potential fraud due to the federal health care funds involved in the transactions.

Under the Puerto Rico Civil Code, the terms of a contract have legal force between the contracting parties, their successors and third parties.  P.R. Laws Ann. tit. 31, § 9754 (2020).  Under Puerto Rico law, the meaning of a written or verbal expression used in a legal transaction is the meaning which it has in the common language.  P.R. Laws Ann. tit. 31, § 6342 (2020). Additionally, "[a] term is considered 'clear' when it is sufficiently lucid to be understood to have one particular meaning, without room for doubt."  López & Medina Corp. v. Marsh USA, Inc., 667 F.3d 58, 64 (1st Cir. 2012); Jiménez v. Triple S. Inc., 154 F.Supp.2d 236, 238 (D.P.R. 2001).

It is evident that, if Meta Med was not created until July 5, 2022, then any allegations pertaining to it before that date cannot move forward.  In the end, even making all inferences in Plaintiffs' favor and giving the allegations the most liberal reading, they simply can never meet the plausibility standard and fail to state a claim upon which relief can be granted by the Court.  In the same vein, according to the Amended Complaint, the agreement between Meta Med and Insulet was not signed until September 1, 2022.  Therefore, Meta Med cannot raise any claims arising from this agreement until *after* the agreement was signed.

Furthermore, Meta Med's argument that the business arrangement was continuous and ongoing cannot withstand a plain reading of the Amended Complaint, which states in no uncertain terms that Mercado signed an agreement with Insulet in December, 2021, and after its creation in July, 2022, Meta Med then signed a similar agreement with Insulet.  (Docket No. 18, ¶¶ 14, 24).  That there are two (2) different

agreements for the products and services in question surely is not a coincidence, since as previously stated, under Puerto Rico law a contract only has effect between the contracting parties and their successors.  P.R. Laws Ann. tit. 31, § 9754 (2020).  Meta Med had absolutely no bearing in the first contract, which was signed exclusively by Mercado in her personal capacity as "Consultant Certified Pod Trainer."  Mercado also signed the second contract not in her personal capacity, but rather, *as a corporate representative of Meta Med, the contracting party*.  There are simply no facts at this juncture upon which the Court can find that a "continuing" relationship was established, given the specific allegations made so far, which pertain to two (2) different parties and two (2) different agreements.  Such a leap is simply too much for the Court to make.

Meta Med additionally proffers that Insulet is estopped at this stage of the proceedings from putting forth its defense that it was not a distributor for Insulet's products under Law 75 because it would go against its own acts, and has practically admitted to a healthcare fraud scheme in so denying.  This matter, however, goes to the heart of Meta Med's Law 75 case as well as its request for preliminary relief, and for which a hearing is necessary.  Whether or not Meta Med will eventually be determined to be a distributor for Insulet's products falling under the purview of Law 75 will be the basis for that hearing.

Consequently, Insulet's Motion for Partial Dismissal of Meta Med's claims (Docket No. 30) is GRANTED and all of Meta Med's claims against Insulet before July 5, 2022, are DISMISSED WITH PREJUDICE.

### D. Law 21 claims.

Insulet, DDP and GEMCO all argue in their respective dispositive motions that the

claims under Puerto Rico Law 21 must be dismissed.  The Amended Complaint vaguely states that "the clear *intent* of the parties was to retain Plaintiffs as its exclusive sales representative" for the Puerto Rico markets. (emphasis added) (Docket No. 18, ¶ 12).[12] The Motion for Preliminary Injunction further admits that there was a purported "unwritten non-exclusive distribution agreement" between the parties.  (Docket No. 19, p. 12).  Having so stated in their pleadings, Defendants aver that Plaintiffs cannot succeed in their Law 21 claim because exclusivity between the parties is required under said law. Their claim therefore fails as a matter of law and must be dismissed.

Plaintiffs failed to offer any opposition against the dismissal of this "alternative" claim.  Therefore, the Court deems it waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

Similar to Law 75, Law 21 protects sales representatives in Puerto Rico against arbitrary contract terminations once said agents have created a productive market for their employers.  Tavarez v. Champion Prods., 903 F.Supp.268 (D.P.R. 1995).  Law 21 defines a sales representative as "[a]n independent entrepreneur who establishes a sales representation contract *of an exclusive nature*, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico."  P.R. Laws Ann. tit. 10, § 279.  Although the term "exclusive" is not defined in the law, in interpreting contracts under Law 75 courts have noted that exclusivity is generally apparent either from the contract or from the arrangements agreed upon between the

---

[12] The Amended Complaint also alludes to a sales representation agreement with "Surgical Innovations" that is not a party to this case.  (Docket No. 18, ¶ 159).

parties. Ballester Hermanos, Inc. v. Campbell Soup, Co., 797 F.Supp. 103, 105 (D.P.R. 1992); R.W. Intern. Corp. v. Welch Food, Inc., 13 F.3d 478 (1st Cir. 1994); P.R. Laws Ann. tit. 31, § 6342 (2020) (the meaning of a written or verbal expression used in a legal transaction is the meaning which it has in the common language).

The Court gives short shrift to this claim because, even without looking at the different contractual elements the Court must examine, the primary factor in this analysis is that the representation be exclusive. The very statute clearly so indicates. See P.R. Laws Ann. tit. 10, § 279; see also Orba, Inc. v. MBR Indus., Inc., 49 F.Supp.2d 67 (D.P.R. 1999) (denying summary judgment because there was a triable issue regarding the exclusive nature of the agreement between the parties); IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 445 (1st Cir. 2010) ("The exclusivity requirement is met where neither the principal merchant nor third parties are allowed to sell the product in the same territory or market in which the sales representative operates") (quoting Cruz Marcano v. Sánchez Tarazona, 172 D.P.R. 526, 544 (2007); Innovation Mktg. v. Tuffcare Inc., 31 F.Supp.2d 218, 222 (D.P.R. 1998) (a sales representative must be an 'exclusive' representative); Alina & A Tours, Inc., 2006 WL 897975, at *9 ("An essential element of a Law 21 claim is the existence of an 'exclusive sales representation contract'"; if a party is non-exclusive, it cannot prevail on a Law 21 claim).

As readily admitted by Plaintiffs in their petition for preliminary injunction, "Meta Med and Defendants have an unwritten non-exclusive distribution agreement." (Docket No. 19, p. 12). Additionally, the Amended Complaint indicates that "there are three authorized distributors of Insulet's products in Puerto Rico", and later specifically refers to Absolife as "another local distributor." (Docket No. 18, p. 16, ¶¶ 53-54; p. 20, ¶ 71).

Plaintiffs also include in their Amended Complaint a diagram detailing "the intricate distribution channel for the Omnipod within the Puerto Rican market" which expressly includes two (2) additional Puerto Rico merchants that sell Insulet's products, Absolife and JDM Solutions.   Id.   Therefore, as a matter of law, the claims under Law 21 cannot lie because, taking the allegations in the Amended Complaint as true, Plaintiffs had no exclusivity as to Insulet's products in Puerto Rico.

Accordingly, the Law 21 claims against all Defendants are DISMISSED WITH PREJUDICE.

## CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. DDP and GEMCO's "Motion to Dismiss" (Docket Nos. 27 and 32) are GRANTED and the causes of action filed against them under Law 75 and breach of the covenant of good faith and fair dealings are DISMISSED WITH PREJUDICE.   In addition, the alternative claim raised under Law 21 is DISMISSED WITH PREJUDICE.

2. Insulet's "Motion for Partial Dismissal" (Docket No. 29) as to Mercado is GRANTED and Mercado's causes of action against Insulet are DISMISSED WITHOUT PREJUDICE of being refiled in the appropriate forum.

3. Insulet's "Motion for Partial Dismissal" (Docket No. 30) of certain claims as to Meta Med is GRANTED and Meta Med's allegations which took place before its creation on July 5, 2022 (¶¶ 8, 39, 87, 88, 90, 113(a) 128, 130, 132, XII (a)) and which reference or imply actions relating to Meta Med before said date) are

Meta Med, LLC, et al. v. Insulet Corporation, et al.
Opinion and Order
Civil 23-1546 (CVR)
Page 31

_____

DISMISSED WITH PREJUDICE.  Furthermore, the alternative claim raised under Law 21 is DISMISSED WITH PREJUDICE.

The request for a preliminary injunction (Docket No. 19) has now been fully briefed, and a hearing with the remaining parties, Meta Med and Insulet, will be promptly set via separate Order.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 23rd day of April 2024.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES DISTRICT JUDGE